# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **GLENN GOODWIN, et al.,** | **CASE NO. 1:18-CV-01014** |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **AMERICAN MARINE EXPRESS, INC., et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | |

Currently pending is Plaintiffs' Motion to Compel, to which all Defendants filed a Brief in Opposition. (Doc. Nos. 48, 53.) For the reasons set forth below, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART.

In their Motion to Compel, Plaintiffs seek fourteen (14) categories of documents or information, delineated at pages 9 through 11 of their Motion. The Court will address each one individually.

**1. Handwritten Ledger Regarding Lease/Purchase of Units 214 and 155.** Plaintiffs assert that Parmjit Gurai testified that she maintained a handwritten ledger regarding all trucks that were being lease/purchased, including Units 214 and 155 that were lease/purchased by Plaintiffs. The ledger accounted for the terms of the lease/purchase and tracked all charges, credits, and balances. Defendants assert that Mrs. Gurai testified that she cannot locate the notebook and assumes it was thrown away inadvertently. Actually, Mrs. Gurai testified that she recorded information regarding Mr. Ramos' lease/purchase in the same three-subject notebook that she recorded the information regarding the lease/purchases of Plaintiffs; the first notebook "got filled" and she "started another";

she kept that book and she is "sure" she has it and will have to "dig again" in her boxes in her house. It was the first "filled" notebook that she could not find. (Deposition of Parmjit Gurai, pgs. 123-24.) Therefore, Defendants are ordered to produce the second notebook that Mrs. Gurai testified she is sure she has.

**2.** **Electronic Files Regarding Lease/Purchase of Units 214 and 155.** Plaintiffs assert that Mrs. Gurai testified that she maintained electronic accounting (Quickbooks and Excel) regarding all trucks that were being lease/purchased, including those driven by Plaintiffs, and Plaintiffs seek permission to have those files inspected by a computer forensic expert. Defendants claim that there are no electronic files and that Mrs. Gurai kept a handwritten notebook because she does not know how to do anything other than use Quickbooks to write checks and deposits. However, Mrs. Gurai testified that she does have a "sheet" in her computer that represented an accounting ledger showing how Plaintiff Goodwin's payments were credited. (Deposition of Parmjit Gurai, pg. 264.) Thus, Mrs. Gurai's testimony belies the claim that she did not maintain any electronic files. Therefore, Defendants are ordered to produce any and all electronic file(s) or sheets regarding the lease/purchases of Units 214 and 155, including those maintained by Mrs. Gurai.

**3.** **Records and Photographs of Goodwin's Alleged Truck Rollover.** Plaintiffs assert that Defendants have failed and/or refused to produce records and photographs of the truck rollover involving Plaintiff Goodwin and since Defendants contend that this rollover played a significant role in the decision to terminate Plaintiff Goodwin, these records and photographs must be produced. Defendants claim that Gurai Leasing and AMX did not send anyone to the scene, the rollover did not damage Unit 155, AMX's casualty insurer handled the property damage claim for the container and chassis, Plaintiffs subpoenaed reports and photographs from AMX's casualty insurer, and Plaintiff

2

Goodwin was not disqualified by safety following the rollover. However, representing that Gurai Leasing and AMX did not send anyone to the scene is not the equivalent of representing that the Defendants do not have any records and photographs of the rollover. Moreover, Plaintiff Goodwin testified that he was given a warning, U16, as a result of the rollover. (Deposition of Glenn Goodwin, pg. 242.) So, although Plaintiff Goodwin may not have been "disqualified" by safety following the rollover, the rollover can be construed as, or arguably was a consideration in his termination. Therefore, if Defendants have any records or photographs of the rollover—despite not having sent anyone to the scene—they are ordered to produce those records and photographs.

4. **Communications with Insurance Carriers Regarding Goodwin.** Plaintiffs seek communications with any insurance carrier and/or agent regarding the termination and/or disqualification of Plaintiff Goodwin, asserting that Defendants contend that the decision to terminate Plaintiff Goodwin was necessitated by insurance concerns, and therefore, any communications with insurance carriers are relevant. Defendants claim that Plaintiff Goodwin was not disqualified as a driver because he failed to meet the underwriting requirements of AMX, any such communications by and between AMX and its casualty insurer would have been produced in response to the subpoenas Plaintiffs served upon the insurance broker and insurer, to the knowledge of AMX, there are no electronic communications with the insurer regarding Plaintiff Goodwin, and Gurai Leasing had no communications with AMX's liability insurer. The testimony of Kuldip Gurai that Plaintiffs cite in support of their assertion, at page 7 of their Motion to Compel, that "Defendant Kuldip Gurai admitted that AMX had communications with its insurance carrier regarding Goodwin's alleged safety violations necessitated his termination" does not actually support their assertion. Accordingly, Plaintiffs' request for these records is denied.

5. **Records Regarding King's Termination.** Plaintiffs assert that because Catherine Behringer testified that she memorialized the reasons for Plaintiff King's termination and that memorialization is part of his file, Defendants must produce the records regarding his termination. Defendants counter by claiming that although Ms. Behringer testified that she believed she filled out a termination form for Plaintiff King, there is not one in his file and AMX cannot produce something that does not exist. The Court agrees that Defendants cannot produce something that does not exist, and that Defendants have represented that any termination form that Ms. Behringer completed relative to Plaintiff King is not in his file. However, Defendants are ordered to produce any existing records regarding Plaintiff King's termination that may not be in his file, but that may be stored or exist elsewhere in company records.

6. **Non-Privileged Emails Regarding Goodwin and King.** Plaintiffs claim that "[s]everal of Defendants' witnesses testified that AMX maintains employee email accounts" in support of their argument they are entitled to copies of all emails regarding Plaintiffs, or in the alternative, should be permitted to have a forensic expert examine the email accounts to obtain any non-privileged e-mails concerning Plaintiffs. Defendants counter by claiming that Gurai Leasing does not have an e-mail address and that AMX produced the very few emails that were sent to and from safety. Plaintiffs do not cite to the deposition testimony of "[s]everal of Defendants' witnesses" to allow the Court to evaluate Plaintiffs' claim concerning their testimony. Accordingly, this request is denied.

7. **AMX Driver Ads.** Plaintiffs seek copies of ads and/or proofs for driver positions for the purpose of demonstrating how AMX and Gurai Leasing held themselves out to potential applicants like Plaintiffs and contend such records bear upon Plaintiffs' allegation that AMX and

4

Gurai Leasing were operating as a joint enterprise. Defendants counter by claiming that AMX has no copies of any ads seeking owner operators or drivers dating back to 2011 and 2012 when Plaintiffs presented their driver qualification credentials to AMX safety and that Gurai Leasing never advertised for drivers. Defendants concede that if Plaintiff(s) testify that they responded to an ad AMX ran seeking drivers, the testimony will be undisputed. Plaintiffs did not limit their request for these ads to the years that Plaintiffs Goodwin and King were hired. Accordingly, Defendants are ordered to produce any ads and/or proofs for driver positions that they have for the years 2010, and 2013 through the present.

8. **Driver Safety Files.** Plaintiffs seek safety files for all of the AMX drivers, including Defendants Harjit Dhillon and Kuldip Gurai to determine if Plaintiffs were treated disparately from a safety perspective. Plaintiffs claim that "[a]t the very least, Defendants should produce the safety files for Defendants Dhillon and Gurai, and the handful of drivers who participated in the lease purchase program for purposes of comparison." Defendants respond by stating that if Plaintiffs can identify a similarly situated non-minority driver that they contend was treated differently, then AMX will seek authorization from the driver to release his or her driver file. Further, Defendants claim that the driver files of Defendants Dhillon and Gurai are not relevant to any issue in this litigation, but do not state a basis for that argument. Defendants are ordered to produce the safety files for any similarly situated non-minority driver(s) that Plaintiffs identify as having been treated differently.

9. **Settlement Statements with Other AMX Drivers.** Plaintiffs seek settlement statements for Defendants Dhillon and Gurai and the handful of drivers who participated in the lease purchase program to determine if Plaintiffs were treated disparately from similarly situated drivers in terms of routes and rates. Defendants counter by asserting that AMX does not issue settlement

statements to drivers and never issued settlement statements to Plaintiffs. However, Gurai Leasing gave copies of the AMX settlement statements to drivers with Mrs. Gurai's handwritten calculations showing how the weekly driver pay was calculated. Thus, drivers did receive settlement statements from Gurai Leasing showing their weekly pay. Accordingly, Defendants are ordered to produce all settlement statements given by Gurai Leasing to drivers who participated in the lease purchase program.

10. **Leases with Owner-Operators.** Plaintiffs seek copies of all the leases AMX has or had with all owner-operators and fleet owners and assert that AMX has only produced a copy of AMX's lease with Kuldip Gurai. Defendants respond by claiming that Plaintiffs have requested copies of all the "form leases AMX has ever entered into," that "AMX has produced copies of the leases with Gurai Leasing for every vehicle Goodwin or King drove," and that "[t]he plaintiffs did not lease vehicles to AMX." However, the Court does not construe Plaintiffs' request as one for "form" leases, or the leases entered into between AMX and Gurai Leasing concerning the vehicles that Plaintiffs drove, or any leases entered into by and between Plaintiffs and AMX. Defendants are ordered to produce copies of any and all original leasing agreements that AMX or Gurai Leasing executed with all owner-operators and fleet owners.

11. **Purchase/Sale/Transfer of Trucks Between AMX and Gurai Leasing.** Plaintiffs seek the production of all records related to the purchase/sale and/or transfer of trucks between Defendants AMX and Gurai Leasing, claiming they bear upon Plaintiffs' allegations that those entities were a joint enterprise for purposes of Truth in Lending Regulations, as well as Plaintiffs' allegations to pierce the corporate veil. Defendants counter by representing what records they have produced that are responsive to this request, and that there are no other documents responsive to this

request other than those produced. If there are any records that evidence "Gurai's alleged assumption of AMX truck loans," then Defendants must produce those records.

**12. Records of Customers Billings for Loads Delivered by Goodwin and King.** Plaintiffs seek all invoices that AMX sent to its customers for loads transported by them. Acknowledging that counsel for Defendants has represented that it is impossible to limit production of the invoices to the individual drivers (as more fully developed in Defendants' Brief in Opposition, at pg. 12, i.e., "AMX does not code its customer invoices by the driver that delivered the load," but by "customer work order and customer number"), Plaintiffs assert that they requested all of the invoices AMX sent to its customers from 2012-2017 or, in the alternative, propose a stipulation as to the percentage increase AMX billed customers over the total payables reflected on the settlement statements. Plaintiffs argue that these records bear upon Plaintiffs' allegations that they were not fully compensated for the loads they hauled. Plaintiffs further assert that "[w]itnesses have confirmed that AMX billed customers and was paid more than the gross figures reflected on settlement statements provided to drivers like Plaintiffs." As an initial matter, Plaintiffs do not cite to any such witness testimony to support this assertion. However, since these records do bear upon Plaintiffs' allegations that they were not fully compensated for the loads they hauled, AMX is ordered to produce invoices submitted to its customers during the time frame that Plaintiffs hauled loads for it, i.e., 2012-2017.

**13. Benefits Available to Owners and Family Members.** Plaintiffs seek records regarding perks and benefits made available to the family members of Defendants Dhillon, Gurai, and Cain. The Court finds this request to be vague and overbroad, and it is denied.

**14.     Truck Profitability Reports.** Plaintiffs seek driver "productivity reports" from 2011-2017 to determine whether Plaintiffs were treated disparately and claim that "[s]everal witnesses have confirmed that the profitability reports exist." However, Plaintiffs do not cite to any witness testimony in support of this claim. Defendants assert that their counsel provided Plaintiffs' counsel with a weekly truck profitability report, but Plaintiffs' counsel refuses to accept that the reports are what the various Defendants referenced in their depositions. Defendants declare that there is no report that shows the profit AMX recognized from loads delivered by Plaintiffs. Accordingly, this request is denied.

**IT IS SO ORDERED.**

Date: September 13, 2019

 *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE