IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GLENN GOODWIN, et al.,** | Case No. 1:18-cv-01014 |
| **Plaintiffs** | |
| v. | JUDGE PAMELA A. BARKER |
| **AMERICAN MARINE EXPRESS, INC. et al.,** | |
| | MEMORANDUM OPINION & ORDER |
| **Defendants** | |

This matter is before the Court upon Defendants' Motion for Separate Trials, filed on July 14, 2021 ("Defs.' Mot."). (Doc. No. 103.) On July 28, 2021, Plaintiffs filed an Opposition to Defendants' Motion ("Pls.' Opp'n"). (Doc. No. 105.) Defendants did not file a Reply. For the reasons set forth herein, Defendants' Motion for Separate Trials (Doc. No. 103) is DENIED.

**I.  Background**

This case has an extensive procedural history spanning several years. Therefore, the Court will recount only the main highlights in the background of this case. This case originated in Ohio state court at the Cuyahoga County Court of Common Pleas as two separate actions: one brought by Plaintiff Glenn Goodwin ("Goodwin"), *Goodwin v. Am. Marine Express, Inc., et al.*, No. CV 17 886259 (Cuyahoga Cty. Ct. Com. Pl.), and one brought by Plaintiff Ronald King ("King") (collectively, "Plaintiffs"), *King v. Am. Marine Express, Inc., et al.*, No. CV 17 886390 (Cuyahoga Cty. Ct. Com. Pl.). The cases involved several claims stemming from an alleged breach of contract involving a lease-purchase program between Plaintiffs and Defendants for Plaintiffs to gain title to semi-truck cabs in the course of their employment. On March 1, 2018, in state court, Goodwin and

King filed a Motion to Consolidate their respective cases, asserting at that time that, "[a]side from the named plaintiffs, the two pending cases are nearly identical."  Mot. to Consolidate at 5, *Goodwin*, No. CV 17 886259.  On March 13, 2018, the Cuyahoga County Court of Common Pleas granted the unopposed Motion to Consolidate.  (*See* Pls.' Opp'n, Doc. No. 105, Ex. A.)

On May 2, 2018, Defendants removed the instant matter to this Court from state court.  (Doc. No. 1.)  On February 22, 2019, Plaintiffs filed an Amended Complaint, setting forth 15 counts.  (Doc. No. 30.)  On May 12, 2020, Plaintiffs filed a Motion for Partial Summary Judgment only with respect to Count 14 of their Amended Complaint against American Marine Express, Inc. ("AMX") and Gurai Leasing Company, LLC ("GLC").  (Doc. No. 61.)  On May 15, 2020, all Defendants, except for GLC, filed an Omnibus Motion for Summary Judgment, seeking summary judgment on all counts.  (Doc. No. 75.)  That same day, Defendant GLC filed its own Motion for Summary Judgment, also seeking judgment on all counts of Plaintiffs' Amended Complaint.  (Doc. No. 76).

This Court issued a Memorandum Opinion and Order on March 5, 2021 (Doc. No. 99) in which it denied Plaintiffs' Motion for Partial Summary Judgment on Count 14, granted in part and denied in part Defendants' Omnibus Motion for Summary Judgment, and granted in part and denied in part Defendant GLC's Motion for Summary Judgment.  *Id.* at 84.  As a result, the only claims that remain in this case are: (1) Count 1, Plaintiffs' claims for breach of contract against AMX and GLC; (2) Count 4, Plaintiffs' claims for fraud against AMX; (3) Count 5, Plaintiff Ronald King's claim for conversion against AMX and GLC; and (4) Count 14, Plaintiffs' claims for violations of the Truth-in-Leasing regulations against AMX and GLC.  All claims against other previously joined Defendants were dismissed at summary judgment, leaving only AMX and GLC as Defendants to the four remaining claims.

In their Motion for Separate Trials, Defendants argue that this Court should hold separate trials for Goodwin's and King's claims. Plaintiffs oppose Defendants' Motion, arguing that Goodwin's and King's claims can be tried in one single trial.

## II. Analysis

Fed. R. Civ. P. 42(b) sets forth:

**(b) Separate Trials.** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

"The rules regarding consolidation and separation are contained in Rule 42(a) and (b) of the Federal Rules of Civil Procedure. 'This rule is a codification of a trial court's inherent managerial power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and the litigants.'" *Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.*, 163 F.R.D. 500, 502-03 (S.D. Ohio 1995) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11th Cir. 1985) (internal citation omitted)).

Under Fed. R. Civ. P. 42(b), "[b]ifurcation is appropriate (1) 'in furtherance of convenience,' (2) 'to avoid prejudice,' or (3) 'when separate trials will be conducive to expedition and economy.'" *Wellington v. Lake Health Sys.*, No. 1:19-cv-0938, 2020 WL 1031537, at *1 (N.D. Ohio Mar. 3, 2020) (quoting *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996)); *see also Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007). "Courts have wide discretion when making bifurcation decisions, but that discretion must be grounded in one of the factors outlined in Rule 42(b). . . . Only one of the criteria from Rule 42(b) needs to be met to justify bifurcation." *Id.*

"'[B]ifurcation is the exception to the general rule that favors resolving disputes in a single proceeding.' . . . In other words, 'bifurcation should be ordered only in exceptional cases.' . . . The

3

party seeking bifurcation bears the burden of demonstrating that it is appropriate." *Id.* at *2 (citations omitted). *See also Ferro Corp. v. Continental Cas. Co.*, No. 1:06-cv-1955, 2008 WL 5705575, at *2 (N.D. Ohio Jan. 7, 2008) ("The party moving for bifurcation bears the burden of demonstrating that concerns of judicial economy and prejudice weigh in favor of granting the motion."). "Furthermore, any prejudice to the Defendant must be balanced against potential prejudice to the plaintiff." *Ohio ex rel. Montgomery*, 163 F.R.D. at 504 (citation omitted). "A decision ordering bifurcation is dependent on the facts and circumstances of each case." *Saxion*, 86 F.3d at 556.

In the instant case, the Court concludes that bifurcation under Fed. R. Civ. P. 42(b) is not appropriate. *See Wellington*, 2020 WL 1031537, at *1. The Court will address each of the factors below.

### 1. Convenience

Defendants do not assert any justification that separate trials would be more convenient. (*See* Defs. Mot., Doc. No. 103.) In their Opposition, Plaintiffs observe that "Defendants' request is unlike traditional bifurcation where liability is tried before damages, such that resolution of the first issue may obviate the need for further proceedings." (Pls.' Opp'n, Doc. No. 105, at 4.) Plaintiffs represent that a joint trial is sufficient because Plaintiffs are "alleging the same fact pattern and overarching scheme," "will call the identical witnesses," and "rely on the same expert witness to testify on the same issues." (*Id.* at 6.)

Bifurcation is often invoked when a court determines an issue of liability separate from damages. *See In re Bendectin Litig.*, 857 F.2d 290, 309 (6th Cir. 1988) ("[M]any courts have upheld cases bifurcated between liability and damages because the evidence pertinent to the two issues is wholly unrelated, and as a logical matter, liability must be resolved before the question of damages.").

That is, a determination on one issue could obviate the need for a determination on another. *MidAmerican Distrib., Inc. v. Clarification Tech., Inc.*, No. 09-96-DLB-JGW, 2011 WL 13227719, at *1) (E.D. Ky. Mar. 9, 2011) ("[B]ifurcation may be appropriate when litigation of one issue may eliminate the need for litigation of other issues." (citation omitted)).  In such a situation, bifurcation can save the parties, witnesses, and court time and expense. *See, e.g.*, *Yung v. Raymark Indus., Inc.*, 789 F.2d 397, 401 (6th Cir. 1986) (finding that a separate trial on a statute of limitations issue was appropriate because it precluded the necessity of trying other issues and that this "should be encouraged because court time and litigation expenses are minimized.")

In this case, the Court concludes that bifurcation would not be more convenient nor save the parties, witnesses, and Court time and expense.  To the contrary, there are core questions of fact and law common to both Goodwin's and King's claims that overshadow any minor factual differences between their claims.  For example, the fact that King participated in the lease purchase program from 2011 to 2014 and Goodwin participated in the program from 2013 to 2017 (*see* Defs.' Mot., Doc. No. 103, at 3) is dwarfed by genuine disputes of material fact that are common to Plaintiffs' claims, such as "whether AMX was also a party to the lease purchase agreements."  (Doc. No. 99 at 42.)  Indeed, Defendants concede that "[t]here are facts common to the claims made by Goodwin and King," including that both Plaintiffs drove trucks owned by GLC that were leased to AMX, both Plaintiffs claim they entered into lease purchase contracts to purchase their respective trucks, Parmjit Gurai was responsible for keeping track of what each Plaintiff owed at any point in time to complete the purchase of the truck, and that such accounting records were not accurate. (Defs.' Mot., Doc. No. 103, at 2-3.)  Moreover, this case is unlike a bifurcation of independent issues, where a decision on

one issue could increase convenience by eliminating the need for a trial on another. *See, e.g.*, *Yung*, 789 F.2d at 401.

The Court finds that Goodwin's and King's claims are similar and that separate trials would be inconvenient. A trial for Goodwin would involve much of the same relevant evidence and testimony as a trial for King. Thus, the Court finds that Defendants have not established convenience of separate trials.

### 2. Avoidance of Prejudice

Defendants assert that "[e]vidence that would be inadmissible if the claims are t[r]ied separately may be admitted if the cases are tried together" and that this would "prejudice the defendants and create the potential for jury confusion not easily cured by repeated limiting instruction by the Court." (Defs.' Mot., Doc. No. 103, at 3.) For example, Defendants argue that King's fraud claims should be time-barred and that "[i]t will be prejudicial to AMX to allow Goodwin to inject allegations of fraud into King's case in chief." (*Id.* at 7.) Similarly, Defendants assert that "[i]t will be prejudicial to allow evidence of an intentional tort committed against King [i.e., conversion] to be presented when Goodwin has no such claim." (*Id.* at 8.) Plaintiffs argue that "[t]he simple fact that different affirmative defenses or objections exist does not prove that they will be prejudiced or that separate trials are necessary." (Pls.' Opp'n, Doc. No. 105, at 6.) "Even in situations where plaintiffs have different legal theories regarding similar facts or *vice versa*, any problems occasioned by this difference can be easily obviated by the procedures available under Fed. [R. Civ. P.] 49." (Pls.' Opp'n, Doc. No. 105, at 3.) Similarly, Plaintiffs assert that the "use of limiting instructions is widely recognized as sufficient to cure potential prejudice in most such cases." (*Id.* at 4.)

The Court is not convinced that the presence of slightly different claims as to each individual Plaintiff, or different defenses to those claims from AMX and GLC, will cause undue prejudice on Defendants necessitating separate trials.  "Courts commonly instruct juries to deliberate the causes of action in a particular order coupled with additional limiting instructions that admonish the jury that certain evidence may not be considered for one claim, but only for another. . . .  And [the jury] could be instructed that certain evidence submitted to prove [one] claim could not be considered when deciding [another]."  *Wellington*, 2020 WL 1031537, at *2.  For example, in *Atwood v. UC Health*, the court addressed various post-trial motions whereby defendants alleged that the court had erred in consolidating the claims of six individual plaintiffs for trial.  No. 1:16-cv-593, 2019 WL 6877643, at *5 (S.D. Ohio Dec. 17, 2019).  The court found that the jury's verdict negated any evidence of prejudice to the defendant:

> The jury's interrogatory answers confirm that the jury differentiated where appropriate between each of the individual patients. Both Plaintiffs' and Defendants' expert witnesses individually opined as to the individual cases. In other words, each sides' experts addressed all six of the patient files. The experts on both sides testified as to the many similarities of the symptoms, diagnosis and treatments rendered. Again, the jury's individualized verdicts belie the argument of prejudice.

*Id.*; *see also Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1496 (11th Cir. 1985) (The trial court's consolidation of four asbestos-injury cases was reasonable and the court took steps, such as allowing the jury to take notes, to ensure that each claim would receive separate consideration).

Here, the Court finds that Defendants have not met their burden in establishing that they would suffer undue prejudice from the consolidation of Plaintiffs' claims in one trial.  Any potential prejudice can be overcome through careful jury instructions.  Plaintiffs' claims are similar and common legal arguments predominate over individualized facts in each Plaintiff's case.  Although there are some factual differences between Goodwin's and King's claims, these factual differences

are not so staggering as to result in prejudice. Limiting instructions from the Court during trial that instruct the jury as to the applicability of the evidence to each Plaintiff, combined with Fed. R. Civ. P. 49's provisions for special verdicts or general verdicts with answers to written questions, and even trial practices such as allowing the jury to take notes, can ensure that there is no jury confusion or prejudice to Defendants in holding one trial.

### 3. Expedition and Economy

Defendants do not argue that two separate trials would be more conducive to expedition and economy. (*See* Defs.' Mot., Doc. No. 103.) Plaintiffs argue in Opposition that "Defendants never objected to the consolidation nor sought to sever the cases in the years leading up to trial despite numerous opportunities" and "waited until . . . two months before trial [] to file this motion." (Pls.' Opp'n, Doc. No. 105, at 5.) Plaintiffs' Opposition represents that Plaintiffs "are still alleging the same fact pattern and overarching scheme perpetrated by Defendants," "will call the identical witnesses to testify at trial," and "will rely on the same expert witness to testify on the same issues." (*Id.* at 6.)

The Court finds that Defendants are unable to establish that expedition and economy would be better served through separate trials. "The principal purpose of Rule 42(b) 'is to enable the trial judge to dispose of a case in a way that advances judicial efficiency and is fair to the parties.'" *Valley Ford Truck, Inc. v. Phoenix Ins. Co.*, No. 1:10-cv-02170, 2011 WL 841177, at *1 (N.D. Ohio Mar. 7, 2011) (quoting *In re Bendectin Litig.*, 857 F.2d at 307). In *Ohio ex rel. Montgomery*, a dairy moved for separate trials in a case involving multiple dairies alleged to have engaged in conspiratorial price-fixing. In denying the defendant's motion, the court reasoned that:

> Separate trials . . . will not make the evaluation of the evidence any less complex. Instead, two juries would have to sift through the expert testimony rather than one. . . . There is no real

> evidence that separate trials in this instance will save trial time. In reality, separate trials will lead to much duplication. Among other things, the Court will have to impanel two juries, and much of the experts' testimony will be repetitive.

163 F.R.D. at 504-05. *See also Phillips v. Potter*, No. 1:05-cv-1852, 2008 WL 11492752, at *31 (N.D. Ohio Mar. 31, 2008) (ruling that three plaintiffs' workplace harassment claims could be tried together, because "as Plaintiffs will be calling many of the same witnesses, the claims should be tried together in the interest of judicial economy.").

Here, the Court finds Plaintiffs' argument regarding burden on parties, witnesses, and judicial resources that would result from separate trials to be well taken. As in *Ohio ex rel. Montgomery*, the Court finds that holding separate trials in this instance would result in less expedition and economy. Instead of one jury being impaneled and hearing evidence from the same witnesses on Plaintiffs' similar claims, bifurcation would require two trials, two juries, and the expense of double the resources. Further, due to the Covid-19 pandemic, the Carl B. Stokes U.S. Court House may conduct no more than three jury trials at any time.[1] Holding a separate jury trial for each Plaintiff, when the claims are similar and based upon common disputes of fact, would not be a judicious use of court resources, particularly in a time when such resources are scarcer than usual. Defendants have not met their burden in establishing that separate trials would serve expedition and economy.

### III. Conclusion

Accordingly, and for all the reasons set forth above, Defendants' Motion for Separate Trials (Doc. No. 103) is DENIED.

**IT IS SO ORDERED.**

---

[1] *See* U.S. Dist. Ct. for the N.D. Ohio, Am. Gen. Order No. 2020-08-8, at 2.

|  | *s/Pamela A. Barker* |
|---|---|
|  | PAMELA A. BARKER |
| Date: August 12, 2021 | U.S. DISTRICT JUDGE |